**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────────────────

**LOUIS J. MILOZZO,**

                                **Plaintiff,**

     v.                                                                           **6:15-CV-554**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**

─────────────────────────────────────────────

**THOMAS J. McAVOY,
Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

      Plaintiff Louis Milozzo brought this action under the Social Security Act, 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security denying his application for benefits. Plaintiff alleges that the Administrative Law Judge's decision is not supported by substantial evidence and is contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.     PROCEDURAL HISTORY**

      On April 20, 2012, Plaintiff filed an application for SSI benefits under Title II of the Social Security Act. On March 11, 2013 Plaintiff filed an application for benefits under Title XVI of the Social Security Act. The claims were denied by initial determination on August 1, 2012. Plaintiff filed a timely request for a hearing on August 2, 2012.

1

Administrative Law Judge ("ALJ") Mary F. Withum presided over a hearing on October 18, 2013. The ALJ issued an unfavorable decision on November 25, 2013, which Plaintiff appealed. The Social Security Appeals Council declined to assume jurisdiction on March 17, 2015, making the ALJ's decision the Commissioner's final decision. This action followed.

As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II. FACTS

The parties do not dispute the underlying facts of this case. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III. THE COMMISSIONER'S DECISION

The ALJ engaged in the required five-step analysis to determine whether a claimant qualifies for disability benefits. See Social Security Administrative Record ("R."), dkt. # 9, at 20-27. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since July 11, 2011.[1] Id. at 20-21. Second, the ALJ concluded that the Plaintiff suffered from a severe impairment: migraine headaches. Id. at 20-22. The ALJ found that this impairment caused "significant limitations in the claimant's ability to perform basic work-related activities." Id. at 21-22. The ALJ also found that the Plaintiff had "nonsevere gastrointestinal reflux disease ("GERD"), nonsevere obesity, nonsevere sleep apnea, and nonsevere depression and anxiety." Id.

---

[1] Plaintiff had "worked part time after his alleged onset date, but his earnings fell below substantial gainful activity levels." R. at 21.

Turning to the next step in the evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically exceeded the severity of one of the impairments listed in the Social Security regulations. Id. at 22. While Plaintiff's migraines were "severe," the Social Security regulations contain no listing category for migraine headaches. Id.

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work. Id. at 20-25. Plaintiff needed to avoid "concentrated exposure to bright lights and excessive noise [and was] limited to quiet noise level jobs and /or work environments." Id. at 20-25.

The ALJ summarized the medical evidence and Plaintiff's hearing testimony. Id. at 22-25. Plaintiff testified that he experienced five to six migraines per week. Id. at 23. The headaches lasted about three hours. Id. These migraines caused Plaintiff blurred vision and dizziness. Id. Imaging evidence, a computerized tomography ("CT") scan, and other examinations, however, "did not indicate any abnormality," were "unremarkable," and "normal." Id. According to the ALJ, the medical records also stated the Plaintiff's migraines were "not intractable" and "he is in the process of finding the right medication combination." Id. at 23-24. In an consultative examination, Plaintiff stated he had been having migraines for the last eight years and "was still trying to find the right medication combination with his physicians." Id. Plaintiff also reported he could "cook, clean, do laundry, shop, bathe, and dress himself" when not experiencing a migraine. Id. at 23. The examiner also found Plaintiff's physical examination normal "with normal gait, reflexes, sensation, and a fair prognosis." Id. Additional medical examinations including CT scans and a brain MRI were likewise normal. Id. Upon "finally meeting" with a neurologist

3

Plaintiff reported "headaches and irritation by light and sound." Id. at 23-24. A MRI conducted by the neurologist, however, was unremarkable. Id. The Plaintiff also "acknowledged that he had not seen a neurologist in a few years, denied dizziness, and continued to smoke cigarettes." Id.

The ALJ concluded that while the Plaintiff's medically impairments could "reasonably be expected to cause the alleged symptoms," Plaintiff's statements were "not entirely credible" in regards to "the intensity, persistence and limiting effects of these symptoms." Id. at 23-25. The ALJ pointed to the Plaintiff earning unemployment income and searching for work after the date he claimed to have become disabled, his ability to walk normally with full muscle strength, and his "noncomplian[ce] with treatment."[2] Id. Plaintiff had failed to "follow up with a neurologist until January 2013" and continued to smoke. Id. There was also no imaging evidence or other medical evidence of any abnormality that would cause Plaintiff's migraines. Id. The ALJ found that the plaintiff could perform light work if he avoided bright lights and excessive noise. Id. The ALJ thus found Plaintiff "not disabled."

## IV.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). Second, the Court must determine whether the Commissioner's findings are

---

[2]At the time of the hearing Plaintiff was still receiving unemployment benefits and thus still searching for employment. R. at 43-45.

supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773. A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).

In Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.    DISCUSSION**

Plaintiff offers three bases for challenging the ALJ's opinion. The Court will address each in turn.

**A.    Treating Physician Rule**

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinion of his treating physician, Dr. Randolph Snow. The ALJ assigned "little weight" to Dr. Snow's opinion that Plaintiff would be absent four or more times per month because of migraines. Plaintiff contends substantial evidence does not support this finding.

Normally, an ALJ is required to give a treating physician's opinion controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight.'" Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 133. "'[T]o override the opinion of the treating physician . . . the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth her reasons for the weight she assigns to the treating

physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

The ALJ offered the following reasons for providing "little weight" to Dr. Snow's opinion:

> Dr. Snow is an acceptable, treating source, but his opinion is not persuasive. As an initial matter, Dr. Snow is a general practitioner and not a neurology specialist (Exhibit 6F). Dr. Snow acknowledged that the claimant still needed to see a neurologist (Exhbit 6F). His very limiting opinion is not persuasive since it is from before the claimant even tried treatment with a neurologist (Exhibit 6F). Also, his opinion is unsupported, as it does not attach or refer to specific evidence that supports it other than a "daily migraines" (Exhibit 6F) notation, which appears to be based on the claimant's self-reported symptoms. In addition, Dr. Snow later described the claimant's migraines as "without mention of intractable" (Exhibit 10F/4). I interpret this to indicate he does not consider them of a disabling nature. Since his opinion does not mirror his own treatment notes, he likely relies on the subjective reports of the claimant for his conclusions. Therefore, I grant his opinion little weight.

R. at 25.

Plaintiff argues that the ALJ's reasoning "failed to apply the treating physician rule." Plaintiff points out that subjective complaints to Dr. Snow are essential diagnostic tools and that "Dr. Snow is in the best position to have personal knowledge of" Plaintiff's limitations. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003). Additionally, Plaintiff claims the ALJ was "substituting her own judgement for that of Dr. Snow" and that if there was any ambiguity the ALJ "was under a duty to attempt to re-contact [Dr. Snow] for clarification rather than inserting her own opinion."

The Court finds that substantial evidence supported the ALJ's findings. The evidence cited above indicates that the ALJ properly considered "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Greek, 802 F.3d at 375. The ALJ pointed to the

7

fact Dr. Snow was a general practitioner and not a specialist in neurology. R. at 25. Dr. Snow's opinion, that the Plaintiff would be absent from work four or more times a month because of the migraines, was also provided before the Plaintiff "even tried treatment with a neurologist." R. at 24-25. Dr. Snow's opinion also was not consistent with other evidence in the record, evidence that only showed unremarkable medical tests and examinations. See Brogan-Dawley v. Astrue, 484 Fed. Appx. 632, 633-34 (2d Cir. 2012); Zabala v. Astrue, 595 F.3d 402, (2d Cir. 2010); 20 C.F.R. § 404.1527(d)(2). Dr. Snow's opinion did not have attached any reference to "specific evidence that supports [his opinion] other than a 'daily migraines' notation, which appears based on the claimant's self-reported symptoms." R. 25.

Plaintiff also contends that the ALJ had a duty to contact Dr. Snow for clarification with reference to Dr. Snow classifying claimant's migraines as "not intractable." Plaintiff asserts an ambiguity existed in the record. Plaintiff cites a number of cases he claims demonstrate the ALJ's "duty to attempt to re-contact [Dr. Snow] for clarification." dkt. #11. While there is an "affirmative obligation to develop the administrative record," recontact is only necessary if existing evidence is "inadequate" to determine whether Plaintiff was disabled. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); 20 C.F.R. § 404.1512; Brogan-Dawley, 484 Fed. Appx. at 634. The ALJ in this case, however, had sufficient evidence in the record to make reaching out to Dr. Snow for clarification unnecessary. In Rosa, a case cited by Plaintiff, few if any treatment notes and "numerous gaps in the administrative record" existed. Rosa v. Callahan, 168 F.3d 72, 79-80 (2d Cir. 1999). One assessment from a doctor consisted of only one page which was "wholly conclusory." Id. In this case, there is a wealth of evidence, treatment information and other forms of data

from Dr. Snow and other medical professionals that the ALJ could have utilized. Id. For example, the record contains numerous pages from Dr. Snow that detail laboratory tests, physical examinations, and Dr. Snow's history of treatment plans for Plaintiff. R. at 324-343, 385-392. The specific document Plaintiff points to, that states "without mention of intractable migraine," is multiple pages and is not just conclusory like the one in Rosa. Rosa, 168 F.3d at 79-90; R. at 391-392. The document instead provides details on a "general examination" that was performed on Plaintiff, a "history of [Plaintiff's] present illness," and has a detailed information about Plaintiff's health as a whole. R. at 391-392.

Because substantial evidence supports the weight the ALJ assigned to Dr. Snow's opinion, the Plaintiff's motion will be denied in this respect.

### B. Credibility Determination

Plaintiff next argues that the ALJ's credibility determination was improper. The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . not entirely credible." R. at 24.

The Commissioner has established a two-step process to evaluate claimants' contentions of pain. 20 C.F.R. § 404.1529(c)(1); see Meadors v. Astrue, 370 Fed. Appx. 179, 183 (2d Cir. 2010). First, the ALJ must determine whether claimant's impairment is a "medically determinable impairment that could reasonably be expected to produce" the pain alleged. 20 C.F.R. § 404.1529(c)(1); see Meadors, 370 Fed. Appx. at 183. Next the ALJ is to "evaluate the intensity and persistence of those symptoms considering all of the available evidence." Meadors, 370 Fed. Appx. at 183; 20 C.F.R. § 404.1529(c)(3)(i)-(vii). If the "claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Meadors, 370 Fed. Appx. at 183-84; 20

C.F.R. § 404.1529(c)(3)(i)-(vii). Among the factors the ALJ may consider in a credibility inquiry are compliance with "treatment, other than medication, you receive or have received for relief of your pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(i)-(vii). The social security regulations provide that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 LEXIS 4 (July 2, 1996).[3] The ALJ may not, however, draw an inference "about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Vincent v. Astrue, 08 CV 0956, 2010 U.S. Dist. LEXIS 146213 at *1 (N.D.N.Y. 2010); SSR 96-7p, 1996 LEXIS 4 (July 2, 1996).

The ALJ correctly found Plaintiff's statements "not entirely credible." Plaintiff points to Vincent v. Astrue to argue that the ALJ should have considered or discussed "whether any information in the record explained why [Plaintiff] took a little longer than expected to follow up with a neurologist." dkt. #11; Vincent, 08 CV 0956 at *13. Vincent relied more heavily on noncompliance with treatment in reaching a conclusion than this case. See

---

[3]Treatment is only one of seven factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements." These seven factors are "(1) [t]he individual's daily activities; (2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) [f]actors that precipitate and aggravate the symptoms; (4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 LEXIS 4 (July 2, 1996).

10

Vincent, 08 CV 0956 at *13. In this case the ALJ also relied on Plaintiff's continued smoking, searching for employment, working part time, performing household tasks after the alleged onset date, and his inconsistent statements about whether he was experiencing dizziness. R. at 24-25; see Vincent, 08 CV 0956 at *12-13. The Plaintiff in Vincent also offered explanations for not following certain treatments. See Vincent, 08 CV 0956 at *11-14. Plaintiff here has yet to provide reasoning for the delay in seeing the neurologist and continuing to smoke after his doctors encouraged him to quit to help with his migraines. Id. The ALJ discussed Plaintiff's smoking at the hearing, as well as his medical coverage, his search for work following the alleged onset date, and his ability to perform household tasks. R. at 23-25; see Vincent, 08 CV 0956 at *11-14. This is also unlike Vincent where the record regarding credibility was found to be incomplete due to the ALJ not inquiring into the reasons for claimant's noncompliance with treatment. Vincent, 08 CV 0956 at *11-14.

The ALJ properly developed the record and her credibility determination was proper. Plaintiff's motion will be denied in this respect as well.

### C. Additional Health Conditions

Finally, Plaintiff argues that his obesity and mental health conditions are severe impairments. Even if they are not severe, he contends, they should have been considered in the RFC. The ALJ found that the Plaintiff's obesity, depression, and anxiety were not severe impairments.

A severe impairment is one that "significantly limit[s] your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Unless the "impairment is expected to result in death, it must have lasted or must be expected to last

for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509. The ALJ must determine:

> whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to be the basis of a finding of inability to engage in any [substantial gainful employment ("SGA")]. An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered.

SSR 85-28, 1985 LEXIS 19 (1985).

Substantial evidence supports the ALJ's finding that Plaintiff's obesity was not a severe impairment. The ALJ pointed to Dr. Pamela Tabb's consultative examination. Dr. Tabb found that Plaintiff did "not have any restrictions for physical activity." R. at 25. More specifically, Dr. Tabb found the Plaintiff could "walk normally, has full muscle strength, normal sensations, and normal reflexes." Id. The ALJ noted that Plaintiff could perform household tasks like cooking, cleaning, laundry, shopping, bathing, and dressing himself. Id. at 24-25. Finally, the ALJ mentioned that the Plaintiff had looked for work following the alleged onset date and was even looking for work at the time of the October 18, 2013 hearing before the ALJ. Id.

The ALJ also had substantial evidence to find that Plaintiff's depression and anxiety were not severe impairments. The ALJ noted Plaintiff's "depression and anxiety do not meet the durational requirement." R. at 453. This is supported in the record by Marc McDowell (mental health clinician) and Janic Schwartz (licensed clinical social worker) withdrawing from Plaintiff in August 2013, stating; "withdraw case and send summary to PCP indicating no identified mental health needs to be addressed through psychotherapy."

12

R. at 453. Further, Dr. Snow referred Plaintiff to a psychologist in April 2013 for an "anxiety state" yet did not address the severity of the "anxiety state" or even if this "anxiety state" placed any limits on Plaintiff. R. at 499. Dr. Snow also failed to state the anxiety or depression could be expected to last twelve months and thus meet the durational requirement. 20 C.F.R. §§ 404.1509.

Plaintiff contends that even if the alleged depression, anxiety, and obesity are not severe impairments, their limiting effects should have been considered in the RFC. A RFC "is the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545. All relevant evidence from the case record is considered in determining a claimant's RFC. Id. When assessing a claimant's RFC, all medically determinable impairments, even "medically determinable impairments that are not 'severe,'" are considered. Id.

The ALJ found that the Plaintiff could perform light work even though "the claimant must avoid concentrated exposure to bright lights and excessive noise."[4] R. at 22. In the RFC analysis the ALJ pointed out a range of medical impairments, including those deemed to be nonsevere. R. at 25. The ALJ considered Plaintiff's obesity ("claimant's physical examination was normal, with normal gait, reflexes, sensation, and a fair prognosis"), anxiety and depression ("claimant was overall coping well"), and also Plaintiff's sinuses ("a sinus CT scan was unremarkable") in the RFC. R. at 25. The ALJ thus fulfilled her requirement of considering nonsevere medical impairments in the RFC.

The ALJ's determination regarding Plaintiff's alleged obesity, anxiety and

---

[4] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b).

depression and the RFC analysis are supported by substantial evidence and the Plaintiff's motion will be denied in this respect.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED.** The Commissioner's motion for judgment on the pleadings is **GRANTED**. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Dated: September 26, 2016

Thomas J. McAvoy
Senior, U.S. District Judge